UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
AT LEXINGTON

CIVIL ACTION NO. 20-273-DLB

BRANDON SCOTT SIZEMORE                                                    PLAINTIFF

v.                          <u>MEMORANDUM OPINION AND ORDER</u>

ANDREW SAUL, Commissioner
of the Social Security Administration                                    DEFENDANT

* *   * *   * *   * *   * *   * *   * *   * *

This matter is before the Court on Plaintiff Brandon Scott Sizemore's Motion for
Summary Judgment, (Doc. # 11), pursuant to 42 U.S.C. § 405(g), which allows Plaintiff
to obtain judicial review of an administrative decision by the Commissioner of Social
Security.  Defendant Andrew Saul, Commissioner of the Social Security Administration,
filed a Cross Motion for Summary Judgment.  (Doc. # 15).  The Court, having reviewed
the administrative record and the parties' motions, and for the reasons set forth herein,
**affirms** the Commissioner's decision.

I.      **FACTUAL AND PROCEDURAL BACKGROUND**

On October 28, 2016, Brandon Scott Sizemore filed an application for Disability
Insurance Benefits under Title II of the Social Security Act, and Supplemental Security
Income under Title XVI of the Social Security Act, alleging disability as of October 1, 2016.
(Tr. 243-251).  Sizemore was twenty-seven years old at the onset of the alleged disability
that rendered him unable to work.  (Tr. 243).  Sizemore's application was denied initially
on May 17, 2017, (Tr. 91), and upon reconsideration on August 12, 2017, (Tr. 124-125).

At Sizemore's request, (Tr. 172-173), an administrative hearing was conducted, (Tr. 45-79), and on May 2, 2019, Administrative Law Judge ("ALJ") Robert B. Bowling found that Sizemore was not disabled under the Social Security Act and, therefore, not entitled to benefits.  (Tr. 8-30).  The decision became the final decision of the Commissioner on May 14, 2020 when the Appeals Council denied Sizemore's request for review.  (Tr. 1-7).

## II.   DISCUSSION

### A.   Standard of Review

Judicial review of the Commissioner's decision is restricted to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *See Colvin v. Barnhart*, 475 F.3d 727, 729-30 (6th Cir. 2007) (citing *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997)).  "Substantial evidence" is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citing *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981)).  Courts are not to conduct a de novo review, resolve conflicts in the evidence, or make credibility determinations.  *Id.* (citing *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984)).  Rather, the Court must affirm the Commissioner's decision as long as it is supported by substantial evidence, even if the Court might have decided the case differently.  *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999) (citing *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).  In other words, if supported by substantial evidence, the Commissioner's findings must be affirmed even if there is evidence favoring Plaintiff's side.  *Id.*; *see also Listenbee v. Sec'y*

2

*of Health & Human Servs.*, 846 F.2d 345, 349 (6th Cir. 1988).  In determining whether the Commissioner's conclusion is supported by substantial evidence, courts "must examine the administrative record as a whole."  *Cutlip*, 25 F.3d at 286.

### B.    The ALJ's Determination

To determine disability, an ALJ conducts a five-step analysis.  *Walters*, 127 F.3d at 529.   Under Step One, the ALJ considers whether the claimant is engaged in substantial gainful activity; Step Two, whether any of the claimant's impairments, alone or in combination, are "severe"; Step Three, whether the impairments meet or equal a listing in the Listing of Impairments; Step Four, whether the claimant can still perform his past relevant work; and Step Five, whether a significant number of other jobs exist in the national economy that the claimant can perform.  *See id.* (citing 20 C.F.R. § 404.1520). The burden of proof rests with the claimant for Steps One through Four.  *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987)).  At Step Five, the burden of proof "shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity."  *Id.* (citing *Bowen*, 482 U.S. at 146 n.5).

Here, at Step One, the ALJ found that Sizemore had not engaged in substantial gainful activity after October 1, 2016, the onset date of Plaintiff's alleged disability.  (Tr. 13).   At Step Two, the ALJ determined that Sizemore had the following severe impairments: traumatic brain injury, fractures of the lower limb, disorders of the spine, neurocognitive disorders, and obesity.  (*Id.*).  At Step Three, the ALJ determined that Sizemore did not have any impairment or combination of impairments that meet or

medically equal the severity of any of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1.  (Tr. 15).

The ALJ then determined that Sizemore possessed the residual functional capacity ("RFC") to perform "light work" as defined in 20 C.F.R. § 404.1567(b), with the following modifications and limitations:

> [T]he claimant can occasionally lift or carry 20 pounds and can frequently lift or carry 10 pounds.  The claimant can sit for six hours in an eight-hour workday with normal breaks.  The claimant can stand or walk for six hours in an eight-hour workday with normal breaks.  The claimant can push or pull equal to the claimant's ability to lift and carry amounts.  The claimant requires a sit or stand option on a 30-minute basis.  The claimant can never climb ladders, ropes, or scaffolds.  The claimant can frequently climb ramps and stairs.  The claimant can only occasionally balance, stoop, kneel, crouch, or crawl.  The claimant should avoid all exposure to hazards, such as unprotected heights and the use of moving machinery.  The claimant is limited to performing simple, routine, and repetitive tasks performed in a work environment free of fast-paced production requirements involving only simple, work-related decisions and with few, if any, work place changes.

(Tr. 16).  The ALJ concluded at Step Four that Sizemore was unable to perform any past relevant work, such as that of a forklift operator or a carpet mover/material handler.  (Tr. 22).

At Step Five, the ALJ concluded that due to Sizemore's age, education, work experience, and RFC, there are a significant number of jobs in the national economy that he can perform.  (Tr. 22-24).  Based on the opinion of a Vocational Expert ("VE"), the ALJ determined that Sizemore could perform a number of occupations, such as a sorter, an inspector, and a hand wrapper.  (Tr. 23-24).  The ALJ further found, based on the VE's opinion, that these occupations would allow for the sit/stand option required by Sizemore's RFC.  (Tr. 23).  Accordingly, the ALJ concluded that Plaintiff was not disabled as defined by the Social Security Act at any time from October 1, 2016, through the date of the ALJ's decision.  (Tr. 24).

C.    Analysis

In Sizemore's Memorandum in Support of his Motion for Summary Judgment, he makes four main arguments: (1) that the ALJ's decision was not supported by substantial evidence, (2) that the ALJ failed to consider the combined effects of Sizemore's impairments when determining his RFC, (3) that the ALJ did not make findings as to Sizemore's ability to perform work on a sustained basis, and (4) the ALJ should have considered whether there was period, greater than twelve months, prior to May 2, 2019, where Sizemore was disabled.  (Doc. # 11-1 at 1).  .

*1.    Substantial Evidence and the Determination of Sizemore's RFC*

RFC refers to "the most [the claimant] can do despite [his] limitations" and should be assessed "based on all the relevant evidence in [the] case record."   20 C.F.R. § 404.1545(a)(1).   Determining a claimant's RFC begins with an assessment of his "impairment(s), and any related symptoms, such as pain, [which] may cause physical and mental limitations that affect what [the claimant] can do in a work setting."   *Id.*   This includes an evaluation of "statements about what [the claimant] can still do that have been provided by medical sources," as well as statements by the claimant or other persons which describe the claimant's "limitations from [his] impairment(s), including limitations that result from [the claimant's] symptoms, such as pain."   20 C.F.R. § 404.1545(a)(3). So long as an ALJ's determination of disability is supported by substantial evidence in the record, the Court will affirm.  *Her*, 203 F.3d at 389-90 (citing *Key*, 109 F.3d at 273).

First, Plaintiff argues that the ALJ's opinion was not based on substantial evidence in the record.  (Doc. # 11-1 at 9).  Specifically, Plaintiff contends that there was not substantial evidence to support that Sizemore could do "light work" due to his brain injury,

and there was no evidence in the record that he could lift or carry up to 20 pounds.  (*Id.* at 10).

Sizemore argues that his traumatic brain injury has "destroyed his short-term memory" and "prevents him from understanding or remembering the simple instructions or details needed to work in any capacity."  (*Id.*).  While there is evidence in the medical record that Sizemore's cognitive abilities are limited, the medical record also contains evidence that Sizemore "had stable neurological functioning," which the ALJ found persuasive.  (Tr. 18).  The ALJ performed a thorough review of medical evidence in the record, including evidence supporting Plaintiff's argument from Dr. Nicole Everman, who opined that Sizemore had difficulty concentrating and following a conversation.  (Tr. 1099).  However, the ALJ also acknowledged substantial evidence in the record from others supporting his RFC determination—namely the opinions of state agency mental health consultants, Dr. Jane Brake, and Dr. H. Thompson Prout, who opined that Sizemore did not have any severe mental health impairments that "would significantly impact the claimant's ability to perform basic work-related activities," (Tr. 86, 117-118), and those from Amy Taylor, a Doctor of Psychology, and Jennie Edward, who has her Master's degree, who opined that Sizemore's "judgment and insight" were within normal limits, (Tr. 1118).  The ALJ also discussed an opinion from Dr. Gary Stewart, which seems somewhat inconsistent in that some of his opinion supports Plaintiff's argument, while some supports the ALJ's ultimate finding.  While Dr. Stewart opined that Plaintiff had a minor neurocognitive disorder and suffered from memory problems, (Tr. 844), he also stated the following:

> Sizemore was oriented to time, place, person, and situation.  He displayed
> no problems with mental control, attention, and memory.  His thoughts
> were logical and goal directed.  There was no indication of a thought disorder.

(Tr. 838).  Furthermore, the ALJ also found relevant the fact that Sizemore "did not provide

adequate cognitive effort" during neurological testing.  (Tr. 22).

In reviewing the medical record in its entirety, while there is evidence in the medical

record supporting a more limited RFC, there is similarly evidence supporting the ALJ's

decision as discussed above.  This is fatal to Plaintiff's substantial evidence argument,

because so long as the ALJ's decision is supported by substantial evidence, it "must be

affirmed . . . even if the claimant's position is also supported by substantial evidence."

*Linscomb v. Comm'r of Soc. Sec.*, 25 F. App'x 264, 266 (6th Cir. 2001) (citing *Buxton v.*

*Halter*, 246 F.3d 762, 772 (6th Cir. 2001)).   While Plaintiff highlights this other evidence

in the fact portion of his Motion for Summary Judgment, (Doc. # 11-1 at 4-7), it is not

within this Court's purview to resolve conflicts of evidence.  *See Cutlip*, 25 F.3d at 286.

Next, Sizemore argues that there was not substantial evidence supporting the

ALJ's decision that Sizemore can lift or carry up to 20 pounds, which is required to perform

"light work."  (Doc. # 11-1 at 10).  In determining Sizemore's RFC, the ALJ gave "great

weight" to the opinions of the state agency medical consultants, Dr. Samuel Chastain and

Sudhideb Mukherjee.  (Tr. 21).  Sizemore challenges this part of the ALJ's judgment

because the state agency medical consultants did not have all of Sizemore's medical

records.[1]  (Doc. # 11-1 at 10).  And while that may be true, the ALJ evaluated the opinion

from Dr. Lyon that the Plaintiff complains Drs. Chastain and Mukherjee did not have the

---

[1]     When evaluating the opinions of Dr. Chastain and Dr. Murkherjee the ALJ further
explained that their "opinions were consistent with the medical evidence at the time that they were
provided and continue to be supported by medical evidence."  (Tr. 21).

benefit of reviewing.  (Tr. 19-20); *see McGrew v. Comm'r of Soc. Sec.*, 343 F. App'x 26, 32 (6th Cir. 2009) (finding no error where it is clear from the ALJ's decision that the ALJ evaluated medical records created after another physician's assessment and took into account any relevant changes in claimant's condition).  Dr. Lyon opined in September of 2017 that Sizemore had chronic lower back pain, with trauma induced degenerative disease of the lumbar spine, but also recommended that Sizemore "conduct all activities of daily living as normally as possible," including exercise.  (Tr. 904-906).  Further, in 2018, Dr. Lyon noted that while Sizemore's range of motion was limited, he was able to ambulate without a device and had normal gait.  (Tr. 1031).  Later that same year, Dr. Lyon opined that Sizemore was "capable of performing activities of daily living."  (Tr. 1088).

While the state agency medical consultants did not have the benefit of Dr. Lyon's treatment records of Sizemore, Lyon did not recommend or note that Sizemore was more limited in his RFC than proscribed by the state agency consultants.  The ALJ performed an analysis of Dr. Lyon's opinions, as well as those from Dr. Chastain and Dr. Mukherjee. (Tr. 19-21).  Plaintiff seemingly challenges the state agency physicians' assessments, but "does not offer statements from [his] treating sources to rebut those assessments."  *Lee v. Comm'r of Soc. Sec.*, 529 F. App'x 706, 712 (6th Cir. 2013).  Sizemore has "failed to demonstrate how [his impairment] interferes with [his] ability to work *beyond the limitations set forth in the RFC.*"  *Combs v. Berryhill*, No. 6:17-cv-68, 2018 WL 934879, at *5 (E.D. Ky. Feb. 16, 2018) (quoting *Jordan v. Astrue*, No. 09-152, 2010 WL 227682, at *3 (E.D. Ky. Jan. 19, 2010)) (emphasis added).  Following a thorough analysis of the medical record, the ALJ determined that despite Plaintiff's limitations, including his back

pain, Plaintiff could still perform "light work" with some modifications.  For the reasons discussed above, Plaintiff has failed to illustrate that the ALJ's opinion was not supported by substantial evidence.

Sizemore next argues that the ALJ failed to consider his impairments in combination in determining his RFC.  (Doc. # 11-1 at 11).  In assessing RFC, the ALJ is required to assess "*all* of claimant's impairments."  *Glenn v. Comm'r of Soc. Sec.*, 763 F.3d 494, 499 (6th Cir. 2014).  The Social Security regulations, namely 20 C.F.R. § 404.1545(e), describes what the ALJ should take into account: "we will consider the limiting effects of all your impairment(s), even those that are not severe, in determining your residual functional capacity."   If the claimant has multiple impairments, the ALJ "will consider the combined effect of all of your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity."  20 C.F.R. § 404.1523(c).  Generally, the ALJ should "consider the combined impact of impairments throughout the disability determination process."  *Id.*

Sizemore argues that it was improper for the ALJ to "simply look at his maladies one-by-one" and that the ALJ "did not credibly assess Mr. Sizemore's combination of impairments" in formulating his RFC.  (*Id.* at 11-12).  Specifically, Sizemore argues that his limitations resulting from his traumatic brain injury and his trauma-induced degenerative disc disease, were not considered in combination when determining his RFC.  (*Id.* at 12).  However, a reading of the ALJ's opinion demonstrates that he correctly addressed the combination of Sizemore's impairments.

In his opinion, the ALJ thoroughly evaluated both Sizemore's severe and non-severe impairments.  The ALJ specifically discussed Plaintiff's allegation "that he was

unable to work due to the combined effects of multiple impairments." (Tr. 17).  In this discussion, the ALJ recognized that Sizemore had experienced a serious motor vehicle collision and subsequently underwent a craniectomy.  (*Id.*).  The ALJ further provided a step-by-step analysis of Sizemore's allegations regarding other impairments such as: knee pain, back pain, head pain, leg pain, concentration and memory difficulties, fractures of the lower limb, antalgic gait, degenerative changes in his back, obesity, and mental health impairments.  (Tr. 17-20).  The ALJ ultimately determined that although "the claimant initially experienced significant limitations after the motor vehicle accident . . . with treatment, he regained normal strength and the ability to ambulate without assistance." (Tr. 21).  Contrary to Plaintiff's assertion that it was inappropriate for the ALJ to consider his "maladies one-by-one," it is clear that the ALJ discussed each of Sizemore's impairments in great detail, which "hardly suggests that the totality of the record was not considered." *Gooch v. Sec'y of Health & Hum. Servs.*, 833 F.2d 589, 592 (6th Cir. 1987); *see also Kemner v. Saul*, No. 3:19-cv-20, 2020 WL 1036453, at *14 (E.D. Tenn. Feb. 12, 2020) (finding the plaintiff's argument that the ALJ failed to consider the combination of his impairments unpersuasive when the ALJ reviewed the plaintiff's severe and non-severe impairments in determining his RFC).

Ultimately, the ALJ crafted a RFC that would both address Sizemore's concentration and memory issues—"[t]he claimant is limited to performing simple, routine, and repetitive tasks"—and his degenerative disc disease that was causing back pain— "[t]he claimant requires a sit or stand option on a 30-minute basis."  Furthermore, the ALJ affirmatively stated that in making his RFC finding he "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the

objective medical evidence and other evidence."  (Tr. 21); *Stamps v. Comm'r of Soc. Sec.*, No. 1:15-cv-557, 2016 WL 4500793, at *6 (W.D. Mich. Aug. 29, 2016) (holding that where the ALJ expressly considered a plaintiff's impairments and noted his obligation to consider all of a plaintiff's impairments in determining RFC, the ALJ "was not required to further elaborate on [his] thought process.").  For these reasons, the Court finds that the ALJ did not err because he thoroughly evaluated Plaintiff's impairments, singularly and in combination, before determining Plaintiff's RFC.

### 2.    *Performance of Work on a Sustained Basis*

Plaintiff next argues that the ALJ did not make findings as to Sizemore's ability to perform work on a sustained basis.  (Doc. # 11-1 at 13).  As discussed above, RFC refers to "the most [the claimant] can do despite [his] limitations" and should be assessed "based on all the relevant evidence in [the] case record."  20 C.F.R. § 404.1545(a)(1).  RFC further assess "an individual's ability to do *sustained work-related physical and mental activities* in a work setting on a regular and continuing basis.  A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule."  SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996) (emphasis added).  Specifically in the context of mental impairments, SSA Regulations require ALJs to evaluate a claimant's functional limitations "based on the extent to which [claimant's] impairment(s) interferes with [claimant's] ability to function independently, appropriately, effectively, and on a sustained basis."  20 C.F.R. § 404.1520a(c)(2).  Plaintiff argues that the ALJ "made no attempt to determine whether Mr. Sizemore – recovering from a TBI, having little "Working Memory," suffering from DDD and taking hydrocodone – could perform work 'on a sustained basis.'" (Doc. # 11-1 at 13).  However, this argument is unsupported by the record.

While an ALJ is required to evaluate an individual's ability to do sustained work in assessing a plaintiff's RFC, there are no "'magic words' with respect to [the] issue" of sustained work.  *Alley v. Saul*, No. 6:20-107, 2020 WL 7130369, at *5 (E.D. Ky. Dec. 4, 2020).  Even though the ALJ may not have explicitly stated that Plaintiff could do work on a sustained basis, it is implicit throughout the ALJ's analysis.  For example, the ALJ explicitly provided limitations specific to Plaintiff to ensure he could work eight-hour days.  The ALJ noted that while "[t]he claimant can sit for six hours in an eight-hour workday with normal breaks" and "can stand or walk for six hours in an eight-hour workday with normal breaks," he would "require[] a sit or stand option on a 30-minute basis."  (Tr. 16).

However, when it comes to evaluating mental impairments, "the ALJ must establish that [a claimant] could have performed such activities on a '*sustained basis*.'"  *Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 838 (6th Cir. 2016); *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 377 (6th Cir. 2013) (remanding when "the ALJ [did] not contend, and the record [did] not suggest, that [claimant] could do any of these activities on *a sustained basis*, which is how the functional limitations of mental impairments are to be assessed").  In considering whether a claimant could work on a sustained basis given his mental impairments, the ALJ should "consider such factors as the quality and level of your overall functional performance, any episodic limitations, the amount of supervision or assistance you will require, and the settings in which you are able to function."  20 C.F.R. § 404.1520a(c)(1).  Here, the ALJ reviewed a significant amount of evidence related to Sizemore's mental impairments.  First, the ALJ discussed Dr. Horne's opinion that Sizemore was "neurologically stable . . . and essentially had returned to his baseline functioning," and that following a number of procedures, Sizemore "made a significant

recovery."  (Tr. 18).  Due to Dr. Horne's opinion, the ALJ determined that Sizemore "had stable neurological functioning" and that the evidence supported his conclusion that Sizemore "retains the ability to perform a reduced range of light exertional work activity." (*Id.*).  The ALJ further found that the medical evidence did not "fully support the claimant's allegations of limitations due to mental health impairments, such as a neurocognitive disorder."  (Tr. 20).

As discussed above, *supra* Section II.C.1, the ALJ supported this conclusion by examining evidence in the record, such as: (1) Sizemore's consultative examination by Dr. Gary Stewart, a neurologist, (2) the opinion of Matthew Grammar, a licensed professional clinical counselor, (3) Dr. Everman's diagnosis, (4) the opinions of Amy Taylor, a Doctor of Psychology, and Jennie Edward, who has her Master's degree, (5) the opinions of state agency medical consultants, Drs. Samuel Chastain and Sudhideb Mukherjee, and (6) the opinions of state agency mental health consultants, Jane Brake and H. Thompson Prout, Ph.Ds.  (Tr. 20-21).  The ALJ ultimately was persuaded the fact that although Sizemore claimed to have severe mental impairments, medical evidence in the record did not support his allegation and his allegation was undermined by his behaviors during cognitive testing.  (Tr. 22).  The ALJ provided the following examples:

> [I]n March 2019, Dr. Taylor and Ms. Edward noted that the claimant did not provide adequate cognitive effort during the evaluation.  They indicated that test results should be viewed with great caution.  Similarly, Dr. Everman noted that the claimant did not give a good effort during neuropsychology testing.  These treatment notes undermine the claimant's allegations to some degree because they show that the claimant showed heightened responses and did not provide adequate effort during testing.

(*Id.*) (internal citations omitted).  Further, the ALJ noted that Sizemore did not "experience more than moderate limitations in concentration, persistence, and pace in that the

claimant retains the ability to perform some household chores and can drive a car." (Tr. 21).

Plaintiff specifically finds issue with the ALJ's observations related to his ability to perform everyday tasks, such as driving a vehicle. (Doc. # 11-1). Plaintiff argues that *Gayheart v. Commissioner of Social Security*, lends credence to his argument. 710 F.3d at 377. In *Gayheart*, the ALJ relied on the claimant's ability visit with family and neighbors to find that he could interact appropriately with others on sustained basis. *Id*. The court determined that these examples of claimant visiting with others were "offset by other examples in the record" including that "driving triggers his anxiety" and there being "[n]othing in the record suggest[ing] that he has left the house independently and on a sustained basis." *Id.* at 378. Therefore, these examples pulled from claimant's every day life were not only unsupported by the record, but were also insufficient to give a treatment physician's opinion little weight. *Id.* The record in *Gayheart* is easily distinguishable from the record underlying Sizemore's claim. Here, the ALJ clearly evaluated all of the medical evidence in the record, and provided reasoning as to why he ultimately determined that Sizemore's allegations of mental impairments were not supported by the medical record. Further, while the ALJ did point out that Sizemore was able to drive a car, and care for himself, this conclusion was supported by Sizemore's testimony, (Tr. 21, 50, 66), as well as a statement made by Sizemore to Dr. Stewart—that Sizemore "reported no problems driving." (Tr. 837).

Regardless, the evidence evaluated by the ALJ supported his conclusion that Sizemore could perform mental tasks in a normal work setting. An RFC assessment is based on a claimant's "ability to do physical and mental work activities *on a sustained*

*basis despite limitations from his impairments*." (Tr. 13) (emphasis added). The ALJ implemented recommendations addressing Plaintiff's memory difficulties by opining that "claimant is limited to performing simple, routine, and repetitive tasks performed in a work environment free of fast-paced production requirements involving only simple, work-related decisions and with few, if any, work place changes." (*Id.*). Implicit in the ALJ's opinion regarding Sizemore's ability to work is a thorough evaluation of his ability to perform work on a sustained basis. Because of the ALJ's in-depth analysis of Sizemore's mental impairments, no "'magic words' with respect to [the] issue" of sustained work were necessary and the ALJ did not err in formulating Sizemore's RFC. *Alley*, 2020 WL 7130369, at *5.

### 3.    *Consideration of a Closed Period of Disability*

Finally, Plaintiff argues that the ALJ should have considered whether Sizemore, at any point, was disabled for twelve consecutive months, even if Sizemore was not disabled the entire time between October 1, 2016 through May 2, 2019. (Doc. # 11-1 at 15). Specifically, Plaintiff alleges that, at the very least, he should have been considered disabled due to his traumatic brain injury for the twelve months immediately after the October 1, 2016 accident. (*Id.*). To the contrary, the Commissioner argues that the evidence in the medical record did not support a closed period of disability. (Doc. # 15 at 14). For the reasons set out below, the Court agrees with the Commissioner.

Under the Social Security Act, the term disability means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or *which has lasted or can be expected to last for a continuous period of not less than 12 months*." 42 U.S.C. §

423(d)(1)(A).  Therefore, a claimant "must meet the twelve-month durational requirement before he can be found disabled." *Lang v. Sec. of Health & Human Servs.*, 875 F.2d 865, at *2 (6th Cir. 1989) (unpublished table opinion).  And while "[t]he Act itself does not provide for a closed period of benefits . . . it is clear that such a closed period of benefits may be awarded." *Myers v. Richardson*, 471 F.2d 1265, 1267 (6th Cir. 1972).  Therefore, as used in the disability context, a "closed period of disability," necessarily means that while the claimant may not be entitled to disability on a permanent basis, he is entitled to disability for some period not less than 12 months.

Plaintiff only points to one instance in the medical record, which he argues supports a closed period of disability—the opinion of Dr. Lyon from September 2017 where Plaintiff suggests that Dr. Lyon instructed "Sizemore to do things as normally as possible, hoping his patient could make some baby steps to resuming normal activities of daily life."  (Doc. # 11-1 at 15).  However, Dr. Lyon's treatment notes simply state: "[p]atient was instructed to conduct all activities of daily living as normally as possible, exercise as tolerated, walk for exercise as tolerated, continue home exercise program." (Tr. 906).  Unlike the inference speculated by Plaintiff, Dr. Lyon's notes actually "Encourage[d] Activity in Moderation with Rest Breaks."  (Tr. 907).  This single opinion does not provide nearly enough medical information to support Plaintiff's argument that Sizemore was disabled at any point for longer than twelve months.  To the contrary, the ALJ discusses multiple medical opinions that supporting a finding that even in the year immediately following Plaintiff's accident, he was able to properly function.  For example, in January of 2017, Dr. Van Horne opined that claimant was "neurologically stable," and had "essentially returned to his baseline" functioning (Tr. 797), and in March of 2017, Dr.

Malik noted that Sizemore retained normal strength, tone, and stability in his leg and gait, as well as "normal mental status" (Tr. 813-814).  The ALJ considered each of these opinions in his decision and found this evidence to be "significant because it shows that the claimant underwent surgery after the motor vehicle collision and subsequently experienced significant improvement."  (Tr. 18-19).

The ALJ evaluated the medical record and determined that the evidence did not illustrate that Sizemore suffered from the inability to work in any continuing twelve-month period.  *See Kennedy v. Comm'r of Soc. Sec.*, 87 F. App'x 464, 466 (6th Cir. 2003) (upholding an ALJ's decision "declin[ing] to award [claimant] a closed period of disability because the evidence did not show a continuing twelve month period" in which she was unable to work).  Therefore, the Court finds there was substantial evidence supporting the ALJ's finding that Plaintiff was not disabled for any twelve month period.

## III.   CONCLUSION

Accordingly, for the reasons stated herein, **IT IS ORDERED** as follows:

(1)    The decision of the Commissioner is supported by substantial evidence and is hereby **AFFIRMED**;

(2)    Plaintiff's Motion for Summary Judgment (Doc. # 11) is hereby **DENIED**;

(3)    The Commissioner's Motion for Summary Judgment (Doc. # 15) is hereby **GRANTED**;

(4)    This civil action is hereby **DISMISSED** and **STRICKEN** from the Court's active docket; and

(5)    A Judgment in favor of Defendant Commissioner will be entered contemporaneously herewith.

This 27th day of September, 2021.



**Signed By:**

**_David L. Bunning_**

**United States District Judge**

J:\DATA\SocialSecurity\MOOs\Lexington\20-273 Sizemore MOO.docx